UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KYLE CARSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:14-cv-01376-TWP-DKL |
| ) | |
| E.ON CLIMATE & RENEWABLES, NORTH ) | |
| AMERICA, WILDCAT WIND FARM I, LLC, ) | |
| ) | |
| Defendants. ) | |

**ENTRY ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court is the Defendants E.On Climate & Renewables, North America's ("E.On") and Wildcat Wind Farm I, LLC's ("Wildcat") (collectively, the "Defendants") Motion for Summary Judgment (Filing No. 60). While working as part of a crane management team at the Wildcat Wind Farm project in Elwood, Indiana, Plaintiff Kyle Carson ("Carson"), was injured. He filed this action alleging negligence and breach of duty by the Defendants to provide a safe workplace to employees of White Construction. For the reasons stated below, the Court **GRANTS** Defendants' motion for summary judgment.

**I. BACKGROUND**

The following material facts are not necessarily objectively true; but, as required by Fed. R. Civ. P. 56, both the undisputed and disputed facts are presented in the light most favorable to Carson, the non-moving party. *See Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court gives Carson the benefit of

the doubt regarding any disputed facts, however, it will not comb the record to identify facts that might support his assertions.[1]

E.On is the sole owner of Wildcat. At the time of Carson's injury, Wildcat was the sole owner of the Wildcat Wind Farm work site ("the wind farm"). On November 14, 2011, Wildcat hired White Construction to build wind turbines at various locations throughout the wind farm. Pursuant to their "Balance of Plant Agreement", the primary contract for the deal, White Construction was required to,

> [h]ave full regard for the safety of all persons upon the Project Site and keep the Project Site and the Scope of Work (so far as the same are not occupied by the Owner and its subcontractors or vendors) in an orderly state appropriate to the avoidance of danger to such persons.

Nevertheless, E.On made some efforts to control safety at the wind farm. For instance, to meet its certification requirements, E.On developed a Health Safety Security and Environmental Policy ("the Policy"). The Policy addressed contracting and job-site requirements to ensure contractor compliance with Federal, State, and local rules and regulations. However, E.On notes that it relies on contractors to comply with the rules and regulations, and E.On's employees are not authorized to specify how contractors comply. (Filing No. 72-1 at 2.)

In addition, E.On employed an Education Health and Safety Director, Jeffery Wolfe, who was responsible for safety management within the North American operating plant region. (Filing No. 66-4 at 4.) However, the Safety Director was not responsible for the safety of contractor employees at individual construction sites, such as the wind farm. E.On also employed an on-site

---

[1] The Court notes that Carson's attorney did a poor job of identifying specific facts to support his arguments, often times citing whole documents to support individual facts. (*See, e.g.*, Filing No. 65 at 2) (citing "EON's Resp. to Request #3", which is a 68 page collection of discovery documents.) This clearly does not comply with Local Rule 56-1(e), which requires that each fact be supported by a citation that "refers to a page or paragraph number or otherwise similarly specify where the relevant information can be found in the supporting evidence." The Court does not have a duty to search and consider part of the record that is not specifically cited as required by Local Rule 56-1(e).

Education Health and Safety Coordinator, Tanisha Norwood. The Safety Coordinator was responsible for "observing contractors to ensure contract compliance and ensuring that E.On representatives were engaging in safe activities". (Filing No. 72-1 at 2.) The Safety Coordinator was "not authorized to provide instructions to any contractors at [the wind farm] regarding the safe operations of cranes". *Id*.

During Carson's employment and prior to his injury, E.On held weekly safety meetings for everyone at the worksite. At these weekly meeting an E.On representative would explain "general safety practices and ways to avoid accidents or other unsafe practices." (Filing No. 66-5 at 3-5.) However, these meetings were not specific to crane operation and Carson does not recall any meetings concerning the operation of crawler cranes by operators and oilers.

At the time of his injury, Carson was employed as a crane oiler for White Construction and regularly worked with a Manitowac 2250 Crawler crane. As a crane oiler, Carson was responsible for providing signals to the crane operator and providing general maintenance on the crane. While working at the wind farm, Carson received his daily work instructions solely from a White Construction crane foreman.

On September 20, 2012, Carson was severely injured while working at the wind farm. On the morning of the incident, he and the crane operator, Joe Dowell ("Dowell"), received instructions from the crane foreman to move the crane to a wind turbine platform several miles away from where it had last been used. Throughout the day, Carson and Dowell took turns moving the crane across the wind farm. Eventually, the crane approached a road with overhead power lines. Carson knew that the power lines would not be lowered for another hour and a half. Accordingly, he signaled to Dowell to stop the crane at the base of the wood matting, which White Construction had placed to assist the crane in crossing the roadway.

The crane came to a stop and Carson stood on the wood matting located in front of the crane in the slight berm up to the road's surface. Then, after having come to a complete stop, the crane began moving forward and traveled onto the wood matting on which Carson was standing. In a previous case, Carson alleged that a malfunctioning crane control had caused the crane to move forward unexpectedly. *See Carson v. All Erection & Crane Rental Corp.*, 1:12-cv-1637-WTL-DML, 2014 WL 1660379, *2 (S.D. Ind. Apr. 25, 2014). The weight of the crane forced the matting to rise into the air and caused Carson to slide down the created ramp and into the crane's path. Tragically, Carson's right foot was crushed by the crane's tracks and he was severely injured.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the court reviews the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion, and identifying "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (noting that, when the non-movant has the burden of proof on a substantive issue, specific forms of evidence are not required to negate a non-movant's claims in the movant's summary judgment motion, and that a court may, instead, grant such a motion, "so long as whatever is before the district court demonstrates that the standard . . . is satisfied."). *See also* Fed. R. Civ. P. 56(c)(1)(A) (noting

additional forms of evidence used in support or defense of a summary judgment motion, including: "depositions, documents electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials").

Thereafter, a non-moving party, who bears the burden of proof on a substantive issue, may not rest on its pleadings but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial. *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007); *Celotex Corp.*, 477 U.S. at 323-24; Fed. R. Civ. P. 56(c)(1). Neither the mere existence of some alleged factual dispute between the parties nor the existence of some "metaphysical doubt" as to the material facts is sufficient to defeat a motion for summary judgment. *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997); *Anderson*, 477 U.S. at 247-48; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "It is not the duty of the court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence upon which [it] relies." *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008).

Similarly, a court is not permitted to conduct a paper trial on the merits of a claim and may not use summary judgment as a vehicle for resolving factual disputes. *Ritchie v. Glidden Co., ICI Paints World-Grp.*, 242 F.3d 713, 723 (7th Cir. 2001); *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Indeed, a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) ("these are jobs for a factfinder"); *Hemsworth*, 476 F.3d at 490. Instead, when ruling on a summary judgment motion, a court's responsibility is to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial. *Id*.

### III. DISCUSSION

Defendants argue that summary judgment is appropriate because Carson cannot demonstrate that they assumed a gratuitous duty of care to make Carson's workplace safe. Further, Defendants argue that Carson has already litigated the issue of proximate causation in a previous and related case and is therefore precluded from arguing that the cause of his injuries was related to their purported negligence. Specifically, the Defendants submit that Carson previously asserted that his injuries were caused by a malfunctioning crane control, and he should not be allowed to pursue a new theory in subsequent litigation. Because summary judgment is granted on the duty of care issue, the Court need not decide whether Carson is also issue-precluded regarding proximate causation.

To begin, the Court notes that Carson did not provide any facts or argument to support his claim that wind farm owed him a duty of care and breached that duty. Instead, Carson's arguments focus exclusively on E.On's alleged negligence. (See [Filing No. 65 at 7](#)) ("EON is being sued for its own negligence, not the vicarious negligence, if any, of Wildcat. It was EON who assumed the safety duties on the project and can be held liable for any breach of such duties."). Accordingly, without any facts to demonstrate a viable claim against it, Wildcat is entitled to summary judgment in its favor. *See Hemsworth*, 476 F.3d at 490 ("a nonmoving party . . . may not rest on its pleadings but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial.").

In contrast, Carson argues that E.On assumed a gratuitous duty of care to provide a safe work site because E.On took a number of safety precautions with respect to the wind farm. Indiana recognizes the gratuitous assumption of duty by one who, through affirmative conduct or agreement, assumes and undertakes a duty to act. *Griffin v. Simpson*, 948 N.E.2d 354, 359 (Ind.

6

App. 2011); *Plan-Tec, Inc. v. Wiggins*, 443 N.E.2d 1212, 1219 (Ind. App. 1983). However, for the duty to arise, the defendant must, *through affirmative conduct*, undertake to perform the task he is charged with having performed negligently. *Griffin v. Simpson*, 948 N.E.2d 354, 359-60 (Ind. App. 2011) (quoting *Holtz v. J.J.B. Hilliard W.L. Lyons, Inc.*, 185 F.3d 732, 744 (7th Cir. 1999)); *Marks v. N. Ind. Pub. Serv. Co.*, 954 N.E.2d 948, 955 (Ind. App. 2011) ("without the actual assumption of the undertaking there can be no correlative legal duty to perform the undertaking carefully"); *American Legion Pioneer Post No. 340 v. Christon* ("Am. Legion"), 712 N.E.2d 532, 535 (Ind. App. 1999).

This means that the defendant must have "specifically and deliberately undertaken the duty"; and that the party, on whose behalf the duty is being undertaken, must "relinquish control of the obligation". *Griffin*, 948 N.E.2d at 359-60 ("the party who adopts the duty must be acting '*in lieu of*' the original party"); *Marks v. N. Ind. Pub. Serv. Co.*, 954 N.E.2d 948, 955 (Ind. App. 2011); *Bd. of Comm'rs of Monroe Cty v. Hatton*, 427 N.E.2d 696, 699-700 (Ind. App. 1981) ("precisely what has been undertaken must be determined because liability is no broader than the actual duty assumed"). *See also Peterson v. Ponda*, 893 N.E.2d 1100, 1106 (Ind. App. 2008) (noting that the issue of control, specifically whether the defendant exercised "control or active supervision of safety at the job site", is determinative in cases involving a common law duty of safety at a workplace).

The assumption of a gratuitous duty of care creates a special relationship between the parties and a corresponding duty to act as a reasonably prudent person. *Plan-Tec, Inc.*, 443 N.E.2d at 1219. While the issue of whether a defendant has assumed a duty generally rests with the trier of fact, if no facts or reasonable inferences in the record create material issues of genuine fact, the question can be determined by law. *Griffin*, 948 N.E.2d at 359; *Am. Legion*, 712 N.E.2d at 535.

Carson's argument regarding the common law duty to provide a safe workplace rests entirely on his broadly asserted, and poorly factually supported, argument that E.On had a safety presence at the wind farm work site. In support of this argument, Carson quotes, in whole part, the bulk of the analysis from *Perry v. N. Ind. Pub. Serv. Co.*, 433 N.E.2d 44, 50 (Ind. App. 1982). (*Compare* Filing No. 65 at 4-5.) However, in terms of applying the *Perry* analysis to the broadly cited facts, he provides only one sentence of analysis. (*See* Filing No. 65 at 6, "Viewing our evidence in the light most favorable to CARSON, summary judgment is inappropriate".)

Reviewing Carson's broadly cited facts in light of the relevant case law, it is apparent that no reasonable jury could assume that E.On undertook a gratuitous duty to maintain a safe work site, with regard to Carson's crane operation.

Carson relies entirely on the *Perry* case to support his argument. However, the facts of this case are readily distinguishable. The *Perry* court held that the defendant may have gratuitously assumed a duty of care to provide a safe workplace when the defendant "assumed the obligation to enforce safety measures at the site", including holding regular safety meetings and maintaining anywhere from 6 to 30 safety men on the work site at all times "who had jurisdiction of the safety program". *Perry*, 433 N.E.2d at 49. Further, the court noted that the plaintiff had alerted one of the defendant's employees wearing a "Safety Supervisor" about the specific dangers that ultimately caused the plaintiff's injuries, immediately prior to the accident. *Id*. at 49-50.

No such facts are alleged here. Although, Carson notes that E.On held weekly safety meetings, those meetings were general in nature and not specific to crane operation. In contrast, Carson admits that he received instruction only from White Construction employees regarding his actual job duties. Further, although Carson notes that E.On employed a Safety Director and a Safety Coordinator, Carson provides no facts to rebut the Defendants' assertion that these

individuals were not responsible for the safety of contractor employees at the work site and did not have authorization to provide contractors with safety instructions. This is a significant difference from the *Perry* case, wherein the court noted that the defendant maintained as many as 30 safety employees, each having "jurisdiction" over safety at the work site. Finally, unlike *Perry*, no facts are alleged that any E.On employees were notified about the potential dangers regarding either the wood matting or the crane controls before Carson's injury. Instead, the facts suggest that White Construction and its employees were solely in control of both the matting and the crane operation, laying the wood mat before the accident and assigning crane maintenance to employees like Carson. *Cf Peterson*, 893 N.E.2d at 1106 (finding a potential duty of care where the defendants acted as "lord and master" over the plaintiff's work, were present at the work site every day, and provided specific direction regarding the work task that ultimately caused the plaintiff's injury); *Plan-Tec, Inc.*, 443 N.E.2d at 1219 (finding a potential duty of care where the defendant, among other things, daily inspected the scaffolding that ultimately caused the plaintiff's injuries)

Instead, the Court considers this case to be more like *Marks v. N. Ind. Pub. Serv. Co.*, 954 N.E.2d 948 (Ind. App. 2011). In *Marks*, the court noted that the defendant instituted a general safety policy for the work site, which the defendant highlighted in a contractor handbook and video; that the defendant held regular safety meetings where safety issues were discussed; and that the defendant even inspected work sites. *Id*. at 956. Nevertheless, the Court found no assumption of a gratuitous duty of care, noting that the plaintiff had failed to provide evidence that the defendant specifically undertook, through affirmative conduct, any actions to ensure that the plaintiff safely performed the work task that caused him harm. *Id*. ("Having safety rules and regulations is insufficient without some affirmative conduct on the part of [the defendant]").

Instead, the *Marks* court, noted that the facts suggested that the defendant had relied on the independent contractor to ensure safety rules and procedures at the work site. *Id*.

Carson has provided no evidence to suggest that any of E.On's general safety measures had any relation to his crane operation. Accordingly, without a showing that E.On specifically undertook, *through affirmative conduct*, any actions to ensure that Carson or White Construction safely moved the crane across the wind farm, laid the wood matting, inspected the crane controls, or parked the crane on the edge of the road, there is no evidence that E.On undertook a gratuitous duty of care with respect to Carson's crane operation. The law is clear in this regard, without the actual assumption of the undertaking there can be no correlative legal duty to perform the undertaking carefully. *Id*.; *Griffin*, 948 N.E.2d at 359-60 (Ind. App. 2011) (noting that, for a gratuitous duty of care to exist, the defendant must, *through affirmative conduct*, undertake to perform the task he is charged with having performed negligently); *Bd. of Comm'rs of Monroe Cty v. Hatton*, 427 N.E.2d 696, 699-700 (Ind. App. 1981) ("precisely what has been undertaken must be determined because liability is no broader than the actual duty assumed").

Because no reasonable jury could conclude that E.On gratuitously assumed a duty to provide a safe work site, particularly in regards to the work tasks that caused Carson's injury, Defendant E.On is entitled to summary judgment in its favor.

## IV. CONCLUSION

For the reasons stated above, the Court **GRANTS** the Defendants' Motion for Summary Judgment ([Filing No. 60](#)). Final judgment will be issued by separate order.

**SO ORDERED.**

Date: 12/30/2015

_____
TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Blake N. Shelby
FROST BROWN TODD LLC
bshelby@fbtlaw.com

Eric A. Riegner
FROST BROWN TODD LLC
eriegner@fbtlaw.com

Kevin C. Schiferl
FROST BROWN TODD LLC
kschiferl@fbtlaw.com

Matthew M. Golitko
GOLITKO & DALY, P.C.
matt@golitkodaly.com

John P. Daly, Jr.
GOLITKO & DALY, P.C.
john@golitkodaly.com